336

WALTER T. SMITH, Claimant, *v.* THE STATE OF NEW YORK,
Defendant.

Claim No. 22003.

Court of Claims, February 1, 1933.

*Herbert A. Robinson,* for claimant.

*John J. Bennett, Jr., Attorney-General,* by *John L. Campbell,
Deputy Assistant Attorney-General,* for the defendant.

ACKERSON, J. On the 29th day of October, 1928, this claimant
was a resident of Weedsport, N. Y. He was forty-six years of
age and was conducting a garage and automobile business in that
place. He had driven automobiles since 1906.

On this day in question he was alone in a Pontiac sedan driving
from Auburn to Weedsport. It was dark. He lit the headlights
on the car when he left Auburn. He arrived near the village of
Sennett about six-thirty P. M. Up to that point from Auburn
he had been traveling on the right-hand strip of concrete on a
concrete highway composed of three strips of concrete each nine
feet wide. A short distance before reaching the four corners in
the village of Sennett this three-strip concrete highway makes a
turn to the right or east and goes to Syracuse. At the point where
it turns east a macadam highway continues on northerly to the
village of Sennett and on to Weedsport still further north. If
the easterly line of the concrete highway at this turn were extended
northerly it would be about eleven feet east of the easterly boundary
of the macadam and the westerly line of the concrete if similarly
extended would practically coincide with the westerly boundary of
the macadam. Northerly of and adjacent to this intersection at
this point of the concrete and macadam highways was a triangular

piece of vacant ground. It was a comparatively hard smooth plot of ground with some crushed stone scattered around on the surface. At the northerly boundary of this triangular piece of ground and about ten feet easterly of the macadam pavement was what is known as a red bull's eye flasher. This flasher was frequently hit and knocked out of commission. In fact the evidence discloses that such was its condition most of the time and it was not in operation on the night in question.

Some four or six weeks before the date in question the employees of the State had parked a tar bucket or wagon some twenty-five or fifty feet north of the flasher but nearer the easterly boundary of the madacam. Just how near it was to the macadam is one of the seriously disputed questions in this case. This tar bucket was on wheels, weighed upwards of two tons, and was parked there on the shoulder of the macadam highway without lights or other signs of warning and had been there from four to six weeks.

On this night in question as this claimant approached this intersection going northward on the concrete highway he was met by an almost continuous line of automobiles going southerly on the concrete. He had to turn to his left through this line of travel to get onto the macadam. He finally found an opening and did so a short distance below or northerly of where the westerly line of concrete actually joined the easterly line of the macadam. It was so dark that he could only see such objects as showed up in the rays from his headlights.

Between the time that the claimant turned off from the concrete highway to go northerly on the macadam and the time of the accident he met an automobile proceeding southerly on the macadam. He testifies that he passed as near to that automobile as it was safe to pass and that about this time he felt some of the wheels of his automobile go off the macadam and immediately following that his car hit this tar bucket and he became unconscious apparently for a very short time. The tar bucket was covered with tar, black in color, unlighted, and claimant says he did not see it before he struck it, nor did he see the red reflector, that being broken at the time of the accident. The collision damaged the automobile beyond repair and seriously injured the claimant, breaking his collar bone and seriously injuring his head and arm to such an extent that he still suffers from dizziness and cannot close his left hand tightly.

Immediately after the accident claimant's automobile was standing diagonally across the macadam highway with the rear of the car near or at the center of the macadam, the two rear wheels and

the left front wheel being on the macadam and the car being in contact or practically so with the tar bucket. When the car was removed a quantity of broken glass and a part of a broken spring were found on the easterly half of the macadam pavement where they had fallen at the time of the collision.

The testimony of different witnesses is to the effect that the tar bucket was parked from three to eight or nine feet easterly of the macadam on the shoulder of the highway.

The position of the automobile after the accident and the broken material found on the macadam indicates that the tar bucket must have been very close to the macadam, probably within three or four feet of its easterly boundary, at the time of the collision.

The State endeavors to overcome this assumption, which it would seem necessarily follows from a consideration of the testimony of the claimant as to the course he pursued and of the undisputed evidence as to the situation of the automobile and the tar bucket immediately following the accident. David J. Fitzgerald, the county engineer of Cayuga county, in the employ of the Department of Public Works of the State and certainly a highly interested witness, testified that the "kettle," as he calls it, was eight feet from the edge of the macadam pavement and parallel to it at the time of the accident. His testimony, however, which precedes that statement indicates that he had no positive knowledge on the subject. This accident occurred on October twenty-eighth and he did not arrive on the scene until three days later, November first. What had happened to this tar bucket in the meantime, if anything, does not appear. He testified that when he arrived there on November first, the first thing he did was to pull the handle on the kettle out of the way so nobody would run into it. That then the next morning, on November second, he went there with a truck and pulled the kettle farther away from the macadam to the place where he claims it was at the time of the accident. Then, after he gets through pulling it around, he measures its distance from the macadam and says it was eight feet and claims that it was in that position when claimant collided with it. He does not tell us how near it was to the macadam before he moved it or how near the handle was to the macadam that he pulled out of the way to prevent some vehicle colliding with it. He says that he could tell where its original position was from the marks there on the ground. Such evidence, however, is very unreliable and at best the witness' supposition is a mere guess.

Then the State's engineer, Gordon, makes a survey of the intersection where this accident happened more than six months after the accident and undertakes to show by a blue print made from

such survey just where the tar bucket stood on the night in question, where claimant's car left the concrete, and the course it took in traveling across the triangular piece of ground between the two roads until it struck the tar bucket. He depends on the statement of Fitzgerald for all of these details, but it must be remembered that Fitzgerald did not arrive on the scene until three days after the accident and that this triangular plot of ground was commonly used by automobiles in making the turn at this point from one road to the other.

Also that on the night the accident happened, Roy Halbert, who drove the tow car from claimant's garage, came in across this triangular space between these two roads and up to the tar bucket on practically the same course as is shown on this blue print to have been taken by the claimant's car. All of which renders this blue print practically valueless as evidence in regard either to the position of the tar bucket or the course the claimant's car took in reaching it.

The undisputed facts in this case which support the claimant's contention are as follows:

1. When the claimant turned off from the concrete highway to go north on the macadam road he met an automobile coming south on the macadam and that in passing it he came as close to it as safety would permit, about which time he felt the wheels of his car go off the edge of the macadam, following which almost immediately he came in contact with this unlighted tar bucket parked on the shoulder of the road.

2. Immediately following this collision claimant's car stood in a diagonal position across the road with its rear at or near the center of the highway and all of its wheels except the right front wheel on the macadam.

3. That as the automobile stood in that position a projection from the tar bucket was jammed into its right side a little in front of the rear end of the front fender.

4. After the automobile and the tar bucket were pulled apart broken glass from the automobile and a part of a broken spring were found on the macadam pavement.

These facts in conjunction with the other testimony of claimant and his witnesses clearly overcome the testimony offered by the State to support its theory, which testimony is based very largely on conjecture.

We must conclude, therefore, that the tar bucket at the time of the accident stood on the shoulder of this highway within three or four feet of the macadam roadway; that it was black and unlighted

in any way and difficult to observe at night and that it had stood in practically the same position from four to six weeks.

While it is true that the shoulder of a road is not constructed as a place for vehicles to travel on, yet neither is it constructed as a parking place for the State's highway machinery or other unlighted obstacles for a traveler to collide with if perchance in the night time he should be compelled, temporarily, to resort to the shoulder of the road when passing another vehicle or for any other sufficient reason.

In the case of *Newell* v. *Town of Stony Point* (59 App. Div. 237) the late Justice WOODWARD, writing for the Appellate Division, Second Department, has well said: "There is no merit in the suggestion made by the defendant that it is not liable, because the stones on which the wagon struck were outside of the traveled portion of the highway. The traveled portion of a highway is not confined to the part actually used the greater portion of the time by vehicles, but is that part which is held open to the public as a highway and which is used in passing other teams. There can be no question as to the duty of the defendant to keep such open way, over which it has assumed to exercise control, in a reasonably safe condition for travel, taking into account the circumstances of the road and its surroundings."

The courts have frequently held the State and municipalities liable for defects in the shoulder of a road or obstructions placed thereon whereby travelers have been damaged. In such cases the traveler has been held free from negligence and the defendant responsible for the injury because of the proximity of the unguarded defect or obstruction to the traveled portion of the highway. (*Whitney* v. *Town of Ticonderoga*, 53 Hun, 214; *Spencer* v. *State*, 133 Misc. 239; *Peek* v. *State*, 137 id. 840.)

If the claimant had crossed the triangular section between these two roads at this intersection, as the State contends he did, that would in no way relieve the State of the gross negligence committed by it in parking an unlighted tar bucket weighing upwards of two tons so close to the metal part of a much traveled highway that a slight deflection of an automobile from the pavement would result in a collision necessarily highly dangerous to property, limb and even life itself. This triangular section was in the road right of way. It was level, hard and partially covered with crushed stone. It was a safe place to drive a vehicle, and as the State well knew it was constantly used by automobiles in passing from one road to the other at this point. The claimant could not, therefore, be charged with negligence for using this portion of the highway if he had driven across it in order to get on the macadam. It was a

custom commonly followed by others and it was a perfectly safe place to travel from one road to the other except as the State had made it dangerous by placing this unlighted obstruction so near to the junction of the northwest corner of this triangular section with the macadam.

It is clear to us, however, that the claimant did not cross this triangular section as the State contends, but that he did reach the macadam after leaving the concrete highway and passed very close to an automobile going south immediately prior to the collision.

That the State was grossly negligent in the premises here is apparent and as it seems to us beyond all controversy. There is absolutely no excuse for parking highway machinery so close to the traveled portion of the highway as to make such an accident as we are considering here possible.

A fair interpretation of the testimony presented on this trial convinces us that the claimant should not be charged with contributory negligence. He is an experienced driver and apparently was not driving carelessly or recklessly at the time of the accident, but with care and caution.

This court was given jurisdiction to hear and determine this claim by chapter 745 of the Laws of 1931. In pursuance of the provisions of that act of the Legislature we believe the claimant herein is entitled to an award against the State to be made up of the following items, viz.:

| | | |
|---|---:|---:|
| Damage to automobile.............................. | $500 | 00 |
| Medical attention, nurse and hospital................. | 415 | 97 |
| Personal injuries.................................. | 1,500 | 00 |
| Total...................................... | $2,415 | 97 |

Findings may be drawn, therefore, for an award in favor of this claimant and against the State for the sum of $2,415.97 for the damages suffered as aforesaid.

RYAN, J., concurs.